UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

OPELTON KELLY,

        Plaintiff,                                   Case No. 2:10-cv-51

v.                                                Honorable Robert Holmes Bell

R. SHUBERT, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. On May 7, 2010, this Court ordered service of Plaintiff's complaint on Defendant Corrections Officer R. Shubert and dismissed the remaining Defendants. On May 23, 2011, Defendant filed a motion for summary judgment (docket #51) on the ground that Plaintiff failed to exhaust his available administrative remedies, as well as on the merits. Plaintiff filed a response (docket #54) and brief, as well as supplemental pleadings. Upon review, I recommend that Defendant's motion for summary judgment be granted as to his equal protection claim regarding the denial of Plaintiff's request to use the microwave and denied as to Plaintiff's retaliation claim.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for

determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable

jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at the Richard A. Handlon Correctional Facility. In his complaint, Plaintiff alleges that on April 26, 2009, he asked Defendant Shubert if he could use the microwave. Defendant Shubert replied that if he wasn't white, he did not have "shit coming." On July 22, 2009, Defendant Shubert called Plaintiff a "nigger" when he asked to have his cell door closed. Defendant Shubert also told Plaintiff to get his "black ass" back to his cell. Later that day, Defendant Shubert refused to let Plaintiff go to yard. Defendant Shubert told Plaintiff that he would show Plaintiff how to write a grievance, and that Plaintiff would "find out the hard way."

On September 3, 2009, Defendant Shubert told Plaintiff that he had a room for Plaintiff in segregation. Defendant Shubert later ordered Plaintiff to present his I.D. card, stating that Plaintiff's shirt was untucked and that his pants were pulled down too far. Plaintiff asked if Defendant Shubert was retaliating against him, and Defendant Shubert stated that he was and that Plaintiff had brought it on himself. Defendant Shubert stated that since Plaintiff liked writing grievances, he would have a lot of time to do so where he was going. Plaintiff was then given a misconduct for threatening behavior and was placed in segregation. Plaintiff was found guilty and was sentenced to 30 days detention and loss of privileges. On September 22, 2009, Defendant Beaulieu interviewed Plaintiff on his complaint against Defendant Shubert.

On September 29, 2009, Plaintiff was released from segregation. Plaintiff claims that he has suffered from emotional distress since his release from segregation and has been seen by

3

psychiatric services for his symptoms. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

Defendant Shubert claims that he is entitled to summary judgment on Plaintiff's claim that Defendant Shubert denied him use of the microwave based on his race because Plaintiff failed to properly exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The

Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly.  Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.*, the regional health administrator for a medical care grievances. *Id.* at ¶ GG.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendant Shubert asserts that although Plaintiff filed a grievance regarding the alleged denial of microwave use on April 26, 2009, he did not appeal the denial of the grievance to step II or step III.  Plaintiff attaches a copy of his step I grievance on this issue as Exhibit B of his response to the motion for summary judgment.  A review of Plaintiff's response, brief and

5

supplemental pleadings shows that Plaintiff failed to file a step II grievance appeal. A plaintiff must pursue all levels of the administrative procedure before filing an action in federal court. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("While we recognize that plaintiff made some attempt to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed."). Therefore, the undersigned recommends that Defendant Shubert be granted summary judgment on Plaintiff's claim that he was denied the use of a microwave on April 26, 2009.

With regard to Plaintiff's retaliation claim, Defendant Shubert asserts that he is entitled to summary judgment because he would have taken the same action despite Plaintiff's exercise of a constitutional right. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).

Defendant Shubert denies making comments to Plaintiff indicating that he was going to have him placed in segregation in retaliation for writing grievances. Defendant Shubert recalls Plaintiff having his shirt untucked and his pants well below his waistline and states that as part of his job in enforcing prison rules, he told Plaintiff to tuck in his shirt and pull up his pants. (Defendant's' Exhibit B, ¶¶ 7-8.) Plaintiff filed a grievance on Defendant Shubert on September 5, 2009, which asserted:

> On 9-3-09 Officer R. Shubert past [sic] out mail in Neebish Unit after Count, when Shubert got to [Plaintiff's] cell Room 134 he stated "we meet again Mr. Kelly, I have a room just for you in Steamboat" then he kick my mail up under my cell door review the camera [b]etween 6:36 and 6:50. On 9-3-09 while walking through the lobby in Neebish Unit going to the day room Officer Shubert called my name out loud "Mr. Kelly come hear [sic] and give me your I.D. review the camera. He then stated "I'm going to say this one time and one time only if you don't give me a straight answer your [sic] going to Steamboat. "What was the deal with us in Round Unit?" I then ask Shubert "is this retaliation because of the complaints and administrative grievances that I file on you" he then stated "yes" and gave me back my I.D. and told me to go to the control center your [sic] getting a threatening behavior. This officer came to Neebish Unit seen me call me out the blue just to issuance of major misconduct in retaliation for grievances that I filed against Shubert because of his conduct Officer R. Shubert deliberate filing of false disciplinary charges against Kelly in retaliation violated Kelly's constitutional rights.

(Defendant's Exhibit B, Attachment 7.)

Defendant Shubert attests that the threatening behavior conduct that he wrote on Plaintiff on September 3, 2009, was written because of Plaintiff's own conduct, and not because Defendant Shubert was seeking to retaliate against Plaintiff. Defendant Shubert asserts that after he told Plaintiff to tuck in his shirt and pull up his pants, Plaintiff stated "Bitch, I'm ignoring you 'cause if I pay attention to you I'm going to beat your ass." (Defendant's Exhibit B, ¶ 8.) Plaintiff was

7

found guilty of making this statement following a hearing on September 9, 2009. (Defendant's Exhibit B, Attachment 3.)

In response to this assertion, Plaintiff reiterates the allegations in his complaint with regard to Defendant Shubert's comments toward Plaintiff on September 3, 2009. In addition, Plaintiff offers copies of the grievance records for grievances he filed on Defendant Shubert on April 26, 2009, and on July 23, 2009. These grievances address Defendant Shubert's alleged use of racially derogatory comments towards Plaintiff, as well as the denial of Plaintiff's request to use the microwave. (Plaintiff's Exhibits B-F.) Plaintiff also alleges that on July 27, 2009, between 2:30 and 3:50 p.m., Defendant Shubert told him, "I'll give you something to write up you will get yours soon." Plaintiff also asserts that at approximately 7:30 p.m., on the same date, Defendant Shubert prevented Plaintiff from going to yard, stating that Plaintiff did not have "shit" coming and that he should go back to his cell and "write that up." When Defendant Shubert made rounds later that evening, he told Plaintiff that he would show Plaintiff how to write a grievance, and that Plaintiff would "find out the hard way." Plaintiff asserts that a review of the security camera footage for these times and dates will support his claim that Defendant Shubert was harassing him and threatening to retaliate against him. The undersigned concludes that Plaintiff has succeeded in showing the existence of a genuine issue of material fact regarding his retaliation claim against Defendant Shubert.

Defendant Shubert alternatively moves for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used

8

to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, there is an issue of fact regarding whether Defendant Shubert retaliated against Plaintiff for his use of the grievance system on September 3, 2009. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Hall*, No. 99-2442, 2000 WL 1679458, at *2; *Burton*, No. 00-1144, 2000 WL 1679463, at *2.

For the foregoing reasons, I recommend that Defendant Shubert's motion for summary judgment (docket #51) be granted as to Plaintiff's claim that he was denied use of the microwave on the basis of his race, and denied as to Plaintiff's retaliation claim.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated:   February 16, 2012